IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TITUS HENDERSON,

                        Plaintiff,

        v.

MATTHEW FRANK, JONNI SHANNON-SHARPE,                OPINION and ORDER
SARA MASON, DAVID GARDNER,
LEBBEUS BROWN, STACEY HOEM, ELLEN RAY,                  19-cv-264-jdp
ANTHONY MELI, SGT. MURIZEWCIE,
JEROME SWEENEY, L.J. SWANDT,
and RICK RAEMISCH,

                        Defendants.

---

TITUS HENDERSON,

                        Plaintiff,

        v.

                                                    OPINION and ORDER
TIM HAINES, GARY BOUGHTON,
GARY HAMBLIN, RICHARD SCHNEITER,                       21-cv-346-jdp
ELLEN RAY, PETER HUIBREGTSE,
CAPTAIN BROWN, and LIEUTENANT TOM,

                        Defendants.

---

TITUS HENDERSON,

                        Plaintiff,

        v.

H. BLOYER, LEBBEUS BROWN, D. ESSER,
CAPTAIN FLANNERY, LIEUTENANT HANFIELD,              OPINION and ORDER
M. HENNERMAN, BRIAN KOOL, M. SCULLION,
JONNI S. SHARPE, JOHN SHARPE, SICKINGER,               21-cv-347-jdp
SERGEANT PRIMMER, JOLINDA WATERMAN,
GARY BOUGHTON, D. GARDNER, SARA MASON,
ELLEN RAY, and EDWARD WALL,

                        Defendants.

TITUS HENDERSON,

                        Plaintiff,
        v.                                          OPINION and ORDER

MIKE DONOVAN, DAVID BROOKS, J. PERTTU,              21-cv-562-jdp
and ALLEN DEGROOT,

                        Defendants.

Plaintiff Titus Henderson, without counsel, is incarcerated at Green Bay Correctional Institution. In these four cases, both Henderson and the state defendants seek judgment in their favor as a sanction against the opposing party. Henderson contends that the assistant attorneys general representing the state defendants ordered prison staff to confiscate or destroy his legal materials and other evidence. Dkt. 123.[1] The state defendants counter by seeking dismissal of these cases as a sanction for Henderson lying about counsel committing misconduct connected to the alleged spoliation. I held a videoconference hearing on February 14, 2024, to take evidence on the parties' motions.

After considering the hearing testimony and other evidence submitted by the parties, I will impose sanctions on Henderson for making false statements that the attorneys and prison staff conspired to destroy his legal materials.

---

[1] All docket citations are to Case No. 19-cv-264-jdp unless otherwise noted.

BACKGROUND

**A. Pre-hearing evidence**

To support his motion for default judgment, Henderson submitted a declaration purportedly based on his personal knowledge and video footage. Dkt. 124. He stated that from March 13 to April 5, 2023, Attorneys Paulson, Remington, and Simcox directed Captain Daniel Cushing to confiscate his legal documents in these cases. Dkt. 124, ¶ 2. Henderson says that he knew about this because on March 13, Cushing told him that the assistant attorneys general gave him that directive, and Cushing later told him that he gave all of his legal documents to Paulson on April 5. *Id.* ¶¶ 3, 6. He suggested that Paulson, Remington, and Simcox were at Green Bay Correctional Institution on April 5; his declaration included a physical description of Paulson. *Id.* ¶ 5. He stated that video footage showed prison staff directing inmates to go into Henderson's cell to take his legal documents. *Id.* ¶ 4.

The state defendants responded with their own motion for sanctions, Dkt. 128, supported by declarations from the assistant attorneys general and prison officials flatly denying Henderson's account, Dkts. 129–137. In particular, they produced video footage of the hallway outside Henderson's cell on April 5, 2023, which does not show any cell search or confiscation of materials. It does show a group of non-uniformed people meeting in the hallway near Henderson's cell. *See* Dkt. 135-2 (placeholder entry for the April 5 footage), at 3:47:30. Henderson believed those people were Simcox, Paulson, and Remington, which they denied.

I concluded that an evidentiary hearing would be necessary to resolve the parties' motions for sanctions. Dkt. 145, at 5. I directed the parties to submit the list of witnesses and other evidence they intend to produce at this hearing, and in particular I directed Henderson

to explain more precisely when the mid-March cell searches occurred so that the state defendants could try to obtain video footage of those searches.

Henderson responded with a declaration that did not give precise times regarding the cell searches: he stated that his property was confiscated between 1:00 p.m. on March 11 and 6:00 p.m. on March 14. Dkt. 146. The state defendants explained that Henderson wouldn't know the precise times that anyone entered his general population cell during this timeframe because he was taken to temporary lockup at 1:00 p.m. on March 11, and that in any event, prison staff retained no relevant video from this time period. Dkt. 147. The state defendants provided a declaration from complaint examiner Alan DeGroot stating that he viewed video from Henderson's cell in response to his grievance about property being lost or stolen in the transfer, but the video only showed Henderson's property on a cart, and DeGroot didn't preserve the video. Dkt. 148.

In his pre-hearing declaration, Henderson also made new allegations of misconduct by prison staff: he stated that Cushing and officers Adam Whiting, Kelly Reignier, Kristina Cortes, and inmates entered his cell to remove his legal property. Dkt. 146, ¶¶ 2–5. He also stated that various officers made the following comments to him:

- Whiting told him "Capt. Cushing told me to bring all your legal files and typewriter directly to him." *Id.* ¶ 7.

- Cortes told him, "Capt. Cushing told me to destroy whatever legal files he didn't need." *Id.* ¶ 8.

- DeGroot told him, "I was trained to lie and submit false files reports for your lawsuits." *Id.* ¶ 9.

- Cushing told him, "You [are] not going to expose me and destroy our lives, I'll destroy all your shit." *Id.* ¶ 10.

- Captain Alejandra Mejia told him, "We take and destroy your legal and personal mail." *Id.* ¶ 11.

4

**B. Evidentiary hearing**

At the hearing, Henderson testified on his own behalf. The state called Attorneys Paulson, Remington, and Simcox, and prison officials Whiting, Cushing, DeGroot, Mejia, Cortes, Reignier, and property room officer Randy Fisher.

Over the course of the hearing, Henderson conceded that the three people in civilian garb captured on video outside his cell on April 5, 2023, were not Attorneys Paulson, Remington, and Simcox. He said that he thought they were the assistant attorneys general because an officer called one of the civilians "Jenn," which Henderson took to mean Jennifer Remington, and the officer introduced another of them to Henderson as Rebecca Paulson.

The parties agreed that Henderson was separated from his property when he was taken to temporary lockup for a disciplinary infraction and that he has remained in segregation since then. Some of Henderson's property was returned to him in segregation and other property remains in storage. Henderson's property was collected by staff and taken to the basement, where Whiting sorted through it to decide what property Henderson could have in his segregation cell, what property would have to remain in storage, and what property was contraband. Henderson was not in his general population cell to see who collected his property in the general population cell and took it to the basement for Whiting to sort.

Henderson said that he was told by Whiting and others that inmates and staff went into his general population cell to remove his legal property. Each of the state's witnesses stated that they were not the staff members who collected Henderson's property in his general population cell and brought it to the basement, nor did any of them know the identities of those staffers.

5

Property officer Fisher testified that when he initially brought property to Henderson's segregation cell, he did not include Henderson's multiple boxes of legal work. But after Henderson told him that he did want his legal work, Fisher brought him those boxes. Henderson continues to assert that Cushing told him that he gave some of his legal property to the assistant attorneys general.

Henderson filed a grievance stating that various property, including some of his legal documents, were not included in his property list. That grievance was ultimately dismissed, with DeGroot stating in his recommendation that "[n]either the ICE nor the Property Department can speak to the whereabouts of any item not recovered or documented." Dkt. 141-1, at 2.

At the hearing, each of the state's witnesses denied confiscating or destroying his property, directing others to do so, or making the comments attributed to them by Henderson.

## ANALYSIS

Henderson and the state defendants have essentially filed cross-motions to sanction each other for litigation misconduct. Henderson contends that the assistant attorneys general ordered prison staff to destroy his documents, and the state defendants contend that Henderson fabricated those allegations. Each side asks for judgment in its favor.

"A district court has inherent power to sanction a party who 'has willfully abused the judicial process or otherwise conducted litigation in bad faith.'" *Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 401 (7th Cir. 2015) (quoting *Salmeron v. Enterprise Recovery Systems, Inc.*, 579 F.3d 787, 793 (7th Cir. 2009). In imposing a sanction as severe as dismissal of a case, I must find by a preponderance of the evidence that the offending party committed misconduct.

*See Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 778–81 (7th Cir. 2016), *cert. denied*, 583 U.S. 822 (2017). The burden is on the party moving for sanctions to make this showing. *Id.*

After reviewing the evidence and taking testimony at the hearing, I conclude that the state defendants have established by a preponderance of the evidence that Henderson made multiple false statements to the court. He stated that his initial declaration was based on his own personal knowledge and prison video footage, but that was false. He didn't directly witness anyone remove his property from his general population cell—he was in segregation by then— and he hadn't seen any video evidence showing this either. He also implied that he had seen the assistant attorneys general outside his cell on April 5, 2023, but he conceded after seeing the video evidence that the three civilians outside his cell weren't the assistant attorneys general.

In his follow-up declaration and at the hearing, Henderson mostly backtracked about directly witnessing misconduct, stating that he believed that the assistant attorneys general interfered with his property and came to his cell on April 5 because other staff told him that. But in that second declaration he also identified Cortes, Reignier, Cushing, and Whiting as officers who entered his cell with inmates to take his property, without any foundation for his knowledge of those events; the state defendants responded by providing work schedules showing that some of these officers weren't even working on the days that Henderson said they removed material from his cell. *See* Dkts. 148-5 and 148-6 (Reignier's and Cortes's work schedules). Henderson also said in his second declaration that several staffers explicitly told him that they would interfere with his property. Ultimately, the thrust of Henderson's declarations and hearing testimony is that multiple prison officials and the assistant attorneys general conspired to confiscate or destroy at least some of his legal property, with several

7

officers directly telling him that, and an officer going so far as to incorrectly identify civilians at the prison as the assistant attorneys general masterminding the conspiracy, for what purpose Henderson does not explain.

This is an outlandish theory that I would find incredible unless there were substantial corroborating evidence. The only evidence supporting even part of his theory is the fact that staff did remove all of his property from his general population cell when he was sent to temporary lockup, and that Henderson contemporaneously complained about some of it having gone missing. Neither the various documents provided by the parties nor the hearing testimony conclusively show what happened to every piece of Henderson's property.

I have no doubt that property can get lost or mistakenly destroyed in the process of transporting and sorting it. Perhaps that even happened here. But the sanctions dispute before me isn't about mundane errors in the processing of his property, nor whether any piece of Henderson's property was lost or destroyed. It's about (1) whether the assistant attorneys general ordered confiscation or destruction of the property; and (2) whether Henderson fabricated his allegations against the assistant attorneys general and other staff.

It strains credulity to think that a team of Department of Justice attorneys would order prison staff to destroy a prisoner's legal materials, and Henderson presents no credible evidence to support that assertion. I find his statements that Cushing told him about the attorneys' plan and that several officers explicitly told him that they would tamper with his property to be not credible; it is simply not believable that this many officers would all tell him about their plan to harm him. Rather, I find the attorneys' and officers' testimony denying those accusations to be credible. At the hearing, Henderson showed that years previously, Attorney Paulson had directed DOC staff to search his property after Henderson contended that he had

compromising photographs of a prison official, but that evidence did not suggest that Paulson had directed staff to confiscate any of his property concerning these cases, or otherwise damage Paulson's credibility.

Therefore, I find that Henderson knowingly made false statements that several officers told him about the conspiracy to harm him. He also falsely stated in his first declaration that his underlying statements were based on his personal observation and video evidence.

Additionally, I find that Henderson made other statements that I cannot conclusively find he knew to be false, but that he made without any reasonable support for them being true. For instance, he may believe that the assistant attorneys general directed others to destroy his legal materials, but there isn't any credible evidence to support that, even if some of his property went missing after his transfer to segregation. I do not find credible his statement that an officer referred to civilians outside his cell on April 5, 2023, as Jennifer Remington and Rebecca Paulson. I note that even if they had planned to harm Henderson, it makes no sense that they would travel in unison to his cell at Green Bay Correctional Institution, weeks after the confiscation of his materials, as part of their plan. Henderson appears to have leapt to the conclusion that they conspired to harm him based on the presence of three other people outside his cell. The evidence here clearly shows that Henderson recklessly accused the DOJ attorneys of serious misconduct without any evidence supporting that accusation. That is sanctionable misconduct even if Henderson didn't know that his conspiracy allegations were false. *See, e.g.*, *Mach v. Will Cnty. Sheriff*, 580 F.3d 495, 501 (7th Cir. 2009) ("bad faith" sanctionable misconduct does not require subjective bad intent, and includes reckless actions); *Egan v. Pineda*, 808 F.3d 1180, 1180 (7th Cir. 2015) ("[b]ad faith can be 'recklessly making a frivolous claim,'" (quoting *Mach*)); *cf. Kotsilieris v. Chalmers*, 966 F.2d 1181, 1185 (7th Cir. 1992) ("bad

faith standard [for sanctions under 28 U.S.C. § 1927] has an objective component, and extremely negligent conduct, like reckless and indifferent conduct, satisfies this standard"). I will grant the state defendants' motion for sanctions and I will deny Henderson's motions for sanctions.

## SANCTIONS

Henderson is an experienced and relatively sophisticated pro se litigant who has filed 23 cases in this court and 8 in the Eastern District of Wisconsin, with most of those coming in the last several years. He has already "struck out" under 28 U.S.C. § 1915(g) by bringing lawsuits or appeals that were dismissed because they were frivolous or malicious or they failed to state a claim upon which relief may be granted. *See Henderson v. Wall*, No. 19-cv-748 (E.D. Wis. Dec. 26, 2019); *Henderson v. Wall*, No. 20-1455 (7th Cir. Nov. 3, 2021); *Henderson v. Boughton*, No. 20-cv-1593 (E.D. Wis. Apr. 27, 2022). Based on his recent financial information, he is already effectively barred from filing non-imminent danger cases. And I previously sanctioned him for repeatedly filing lawsuits naming dozens of defendants concerning multiple unrelated series of events: I stated that any similar lawsuits that he files would be summarily dismissed without giving him an opportunity to amend his complaint. *See Henderson v. Walker*, No. 15-cv-417-jdp, slip op. at 2–3 (W.D. Wis. May 24, 2017).

These sanctions have not deterred Henderson from making baseless accusations and false statements in these cases. This repeated misconduct drains the resources of the court, the Wisconsin Department of Justice, and the Department of Corrections. Efficient litigation depends of all parties operating in good faith; Henderson has ignored this principle by

disregarding whether the statements he made were truthful, forcing all of us to spend time and resources investigating his specious allegations.

I conclude that the only effective sanction now is to fully bar Henderson from litigating civil rights lawsuits for a period of time. I will dismiss all of Henderson's cases in this court— the above-captioned four cases, as well as his two other pending cases in which he has not raised his false allegations of evidence tampering, *Henderson v. Perttu*, Case No. 23-cv-346-jdp, and *Henderson v. Matushak*, Case No. 23-cv-385-jdp. And I will issue a filing bar that does not include an imminent-danger exception for civil suits. *See Lindsey v. Hoem*, No. 19-3278, 2020 WL 1514856 (7th Cir. Mar. 30, 2020) (citing *Support Sys. Int'l, Inc. v. Mack*, 45 F.3d 185, 186 (7th Cir. 1995), as authorizing such a filing bar). Accordingly, the only cases that Henderson may file in this court are habeas corpus petitions relating to his criminal convictions. Any civil lawsuit that Henderson files will be docketed and summarily dismissed. After two years, Henderson may file a motion asking me to lift or modify this filing bar.


ORDER

IT IS ORDERED that:

1.  Plaintiff Titus Henderson's motion for sanctions, Dkt. 123, is DENIED.

2.  The state defendants' motion for sanctions, Dkt. 128, is GRANTED.

3.  Plaintiff is sanctioned as set forth in the opinion above.

4.  All of plaintiff's currently open cases in this court are DISMISSED. The clerk of court is directed to enter judgment in each case.

5.  The parties' remaining motions in these cases are DENIED as moot.

Entered March 26, 2024.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge